No. 32,740

MARY TURNER, *Appellee*, v. THE CITY OF WICHITA, *Appellant.*

(57 P. 2d 79)

Opinion filed May 9, 1936.

*Vincent F. Hiebsch, K. W. Pringle* and *Forest V. McCalley,* all of Wichita, for the appellant.
*John B. Bryant* and *E. Mack Bryant,* both of Wichita, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action for damages for the wrongful death of the son of plaintiff. The verdict of the jury was in favor of plaintiff and assessed her damages at $300. The defendant filed a demurrer to the evidence of plaintiff, also a motion for judgment on the answers to special questions notwithstanding the general verdict.

Plaintiff filed a motion for a new trial. The trial court overruled the demurrer to the evidence, denied the motion for judgment on the special questions, sustained the motion of plaintiff for a new trial and on its own motion set aside the answers to the special questions. The defendant appeals from the order overruling the demurrer to the evidence and from the orders overruling the motion for judgment notwithstanding the general verdict and granting plaintiff a new trial.

This case has been in this court before. See *Turner v. City of Wichita*, 139 Kan. 775, 33 P. 2d 335. In that case a judgment in favor of plaintiff was reversed and a new trial was ordered on the ground of newly discovered evidence.

During a windstorm the son of the plaintiff was struck by a branch blown from a tree standing in the parking. He was killed instantly. The branch broke off from the top of a tree and blew a distance of about 44 feet from the base of the tree before it struck deceased.

When the case was here before this court laid down the rule as to liability of a city in case of branches falling from trees, as follows:

"A city is liable in damages to a person injured by a falling branch or limb of a tree only when the city has notice of the defective condition of the tree, and the branch or limb falls on account of its decayed or rotted condition or is thrown down as the result of usual and ordinary winds." (Syl. ¶1.)

Defendant argues that the evidence is undisputed that the wind on the night in question was an unusual wind.

Another rule laid down in the case is as follows:

"In case a high and more or less unusual wind is blowing, and it need not be a tornado, nor even of unprecedented velocity, and it is obvious to a person of ordinary intelligence traveling upon the street that limbs and branches, either decayed, rotted or living, from trees standing in the highway, may be thrown down, there is no libability, unless the condition of the tree or the limbs or branches thereof is so patently bad and has existed for such length of time that permitting them to remain is equivalent to an utter disregard of the safety of the traveler in the street." (Syl. ¶ 1.)

Defendant argues that the undisputed evidence of plaintiff does not sustain the burden put on plaintiff by either one of the above rules. Basing its arguments on this contention defendant urges that the demurrer to the evidence of plaintiff should have been sustained.

This argument will require a careful consideration of the evidence.

O. A. Smith heard a crash, saw deceased on the ground. The yard was strewn with limbs. In his opinion, the top of the tree was dead for about three weeks before the accident. There was no change in

the tree at any time in these three weeks. The wind broke off the limb, but it looked like good dead wood.

Paul Philpott saw deceased just before he was killed. At the time deceased was holding his hat on his head. It took both hands. In his opinion it was about 30 feet from the base of the tree to where deceased was standing. This was the strongest wind he had ever seen in Kansas. While the wind was at its height the limb cracked off and broke in two pieces. One piece blew across and struck deceased on the head.

F. W. Hall testified that he was a real-estate man. He saw the tree a few days before the accident. It looked at the top as if it were rotten and liable to come out by a puff of wind. He talked to the director of parks about it and asked for the tree for wood. He further testified that a picture taken May 1, 1933, which was in court, looked like the tree was alive, being in leaf. He saw a piece of the limb in court and would call it rotten wood. However, if a tree was in leaf he would not call it rotten. He could not break off any of the rotten wood with his hands but he could with an ax.

This is all of the evidence of plaintiff offered in her case in chief. Since the demurrer to the evidence was overruled, if the testimony of defendant cured any defect of the case of plaintiff she should have the benefit of it when considering a demurrer at this stage of the case.

The evidence offered by defendant will be considered.

R. M. McGaffin testified that he was forestry foreman. The tree was 35 feet high where the limb was broken off. It was 44 feet from the base of the tree to where deceased was struck. At the top of the tree where the piece broke off there was sap in the tree. Part was dead and part had sap in it. Numerous other trees were blown down during the storm. One maple, 16 inches in diameter, was blown down. One live cottonwood, 3½ feet in diameter, was twisted so badly it had to be taken down. The balance of his testimony was as to the velocity of winds and was not helpful to plaintiff.

E. J. Merritt testified as to the velocity of the wind and his testimony was not helpful to plaintiff.

Raymond Edwards, Ralph Martin and J. W. Rule testified as to trimming trees and the testimony was not of any help to plaintiff.

William Eaton testified as to the velocity of the wind and did not help plaintiff's case.

Frank Garrison testified as to trimming the tree in question the next spring after the accident.

Alfred MacDonald testified that he was director of parks and forestry of the city of Wichita. His testimony was of a general nature and did not help plaintiff's case.

In rebuttal plaintiff offered the testimony of the government meteorologist for Wichita. He testified that at 8 o'clock in the evening of the day in question the wind blew at 15 miles per hour. Between 8 and 9 it had increased to 17 miles an hour. Between 9 and 10 it had shifted to the south and increased to 21 miles an hour. During January, 1932, the wind reached a velocity of 22 to 31 miles per hour. Nine times in April it reached that velocity, 12 times in August, 6 times in September and 9 times in October. A wind of 25 miles per hour in Kansas is not very uncommon. Where winds are gusting and twisting their velocity might vary greatly. It was possible to have a much stronger wind a block or two away from his register than was shown by his register. The weather bureau records were about 5 blocks from the scene of the accident. There was no obstruction from any direction where his instruments were.

We have seen the two rules under which a city is liable in damages to persons injured by a falling branch or limb of a tree. If the plaintiff bases his case on the first rule he must first prove notice of the defective condition of the limb. Plaintiff argues that she did this by the testimony of the real-estate agent. He testified that the tree looked at the top as if it were rotten and liable to come out by a puff of wind. He talked to the director of parks about it. Perhaps the rule with reference to consideration of the evidence offered by plaintiff that it must be taken as true and every inference drawn therefrom favorable to plaintiff makes it incumbent to take at its face value the testimony of this real-estate agent who apparently could tell so much about the top of a tree 35 feet in the air. We will take this as notice of the defective condition of the tree.

The plaintiff would also be confronted with the burden of proving that the wind was a usual or ordinary one. This burden was not sustained. There was evidence that the ground was covered with broken limbs. The deceased was holding his hat on with both hands just before he was struck. One witness feared that the wind would blow over the pumps at the filling station. The limb blew a distance of 44 feet from the base of the tree before it struck deceased. The testimony of the meteorologist did not help this. It is true that the instruments registered a wind velocity of only 17 miles per hour at

about the time of the accident. This would be no proof however of what the velocity was a few blocks from the register. The pranks of windstorms are too well known for us to hold that.

We hold that liability was not established under the first rule announced.

We shall consider whether liability was established under the second rule quoted above. To recover under this rule, if the wind was a high one, the plaintiff must prove that the condition of the tree was so patently bad and had existed for such a length of time that permitting the limb to remain was equivalent to an utter disregard of the safety of the traveler on the street.

We have seen what the evidence was as to notice. What was the condition of the limb itself? The strongest evidence furnished by plaintiff was that a witness could break it with an ax. With the large number of trees there are in Wichita it would be a harsh rule that would state that where a limb was in no worse condition than this one, and had been there no longer than it was, the city authorities showed an utter disregard for the safety of travelers in the street.

We hold that the demurrer of defendant should have been sustained. We are aware that this is a different result than was reached when the case was here before. See *Turner v. City of Wichita,* supra. When that case was here, however, defendant was urging that all the evidence compelled a judgment for defendant. The question of a demurrer to the evidence of plaintiff was not before us.

The judgment of the trial court is reversed with directions to sustain the demurrer to the evidence of plaintiff and dismiss the case.